UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CITY OF ONEIDA, NEW YORK,

               Plaintiff,

   -against-                                                5:08-CV-0648 (LEK/GJD)

KENNETH L. SALAZAR,[1] Secretary of the United
States Department of the Interior; P. LYNN SCARLETT,
Deputy Secretary of the United States Department of
the Interior; JAMES E. CASON, Associate Deputy
Secretary of the United States Department of the
Interior; FRANKLIN KEEL, Regional Director of the
Eastern Regional Office of Indian Affairs,

               Defendants.
_____

**MEMORANDUM-DECISION AND ORDER**

The City of Oneida, New York ("Plaintiff") filed this action on June 19, 2008, challenging a May 20, 2008 Record of Decision ("ROD") in which the United States Department of the Interior ("DOI") decided to accept approximately 13,000 acres of land in central New York into trust for the benefit of the Oneida Indian Nation ("OIN"). See generally Complaint (Dkt. No. 1). Presently before the Court is a Motion to dismiss two of Plaintiff's claims, filed by Defendants. Dkt. No. 14.

**I.    BACKGROUND**[2]

---

[1] On January 20, 2009, Kenneth Salazar was confirmed as the Secretary of the United States Department of the Interior and, therefore, replaces Dirk Kempthorne as a Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d). See FED. R. CIV. P. 25(d).

[2] The above-captioned case is one of several filed in this Court by different plaintiffs raising challenges to various aspects of the DOI's May 20, 2008 decision to accept approximately 13,003.89 acres into trust for the OIN. See 5:08-CV-633; 5:08-CV-649; 6:08-CV-647; 6:08-CV-

1

On April 4, 2005, the OIN submitted a request to the DOI's Bureau of Indian Affairs requesting that the Secretary of the Interior (the "Secretary") take approximately 17,370 acres in trust for the OIN. See Dkt. No. 14, Attach. 3. On November 24, 2006, the DOI issued a draft Environmental Impact Statement ("EIS") regarding the proposed fee-to-trust request. Id. The public comment period was extended until February 22, 2007, and public hearings were held on December 14, 2006 and February 6, 2007. Id. The DOI issued its final EIS on February 22, 2008. Id. On May 20, 2008, the DOI issued its determination to accept approximately 13,003.89 acres into trust for the OIN. Id.

Plaintiff filed the Complaint in this action on June 19, 2008. Dkt. No. 1. On October 2, 2008, Defendants filed the presently pending Motion for partial dismissal, seeking to dismiss Plaintiffs' first and second causes of action. Dkt. No. 14.

## II.   DISCUSSION

Defendants move to dismiss Plaintiff's first and second causes of action, which allege that Section 465 of the Indian Reorganization Act ("IRA"), 25 U.S.C § 465 ("Section 465"), is an unconstitutional delegation of legislative authority on its face and as applied to this trust application, respectively. See Motion (Dkt. No. 14); Compl. ¶¶ 21-34.

### A.   Standard of Review

---

660; 6:08-CV-644.  These cases represent only the latest chapter in a long saga of litigation involving the OIN's land claims in New York.  For a more detailed historical background of the OIN and this litigation, see, for example, the Supreme Court's opinion in City of Sherrill, New York v. Oneida Indian Nation of New York, 544 U.S. 197 (2005) ("Sherrill"), the Second Circuit's opinion in Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139 (2d Cir. 2003) (reversed by the Supreme Court in Sherrill), or this Court's opinions in Oneida Indian Nation of New York v. New York, 500 F. Supp. 2d 128 (N.D.N.Y. 2007) and Oneida Indian Nation of New York v. New York, 194 F. Supp. 2d 104 (N.D.N.Y. 2002).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a motion to dismiss, a district court must accept the allegations made by the non-moving party as true and "draw all inferences in the light most favorable" to the non-moving party.  In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95 (2d Cir. 2007).  "The movant's burden is very substantial, as 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d. Cir. 1995) (internal quotation and citations omitted)).

### B. First Cause of Action

Plaintiff "seeks a declaration that . . . [Section 465] . . . constitutes, on its face, an unconstitutional delegation of Congressional authority to the Secretary of the Interior." Compl. ¶ 22.  Defendants move to dismiss this claim.  See generally Motion; Reply (Dkt. No. 29).

Article I, § 1, of the Constitution vests "all legislative powers herein granted . . . in a Congress of the United States." U.S. CONST. art. I, § 1.  Accordingly, Congress "is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is vested." Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935); see also Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 472 (2001); Mistretta v. United States, 488 U.S. 361, 371 (1989) ("The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of government.").  However, the Supreme Court has recognized that "Congress simply cannot do its

3

job absent an ability to delegate power under broad general directives" and therefore Congress may confer decision-making authority on agencies. Mistretta, 488 U.S. at 372. "[W]hen Congress confers decision-making authority upon agencies, Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to perform.'" Whitman, 531 U.S. at 472 (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)). The Supreme Court "has deemed it 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" Mistretta, 488 U.S. at 372-73 (quoting Am. Power & Light Co. v. SEC, 328 U.S. 90, 105 (1946)).

Plaintiff argues that Section 465 lacks the requisite intelligible standard and is therefore an unconstitutional delegation of legislative authority. See Compl. ¶¶ 24-26. "In a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency." See Whitman, 531 U.S. at 472. In pertinent part, Section 465 provides:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.
>
> ***
>
> Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

25 U.S.C. § 465.

Every court to consider a delegation challenge to Section 465 has rejected it and found that agency regulations sufficiently limit the Secretary of the Interior's discretion. See, e.g., Michigan

Gaming Opposition v. Kempthorne, 525 F.3d 23, 33 (D.C. Cir. 2008); Carcieri v. Norton, 497 F.3d 15, 43 (1st Cir. 2007) (en banc), rev'd on other grounds sub nom. Carcieri v. Salazar, __ U.S. __, 129 S. Ct. 1058 (2009); South Dakota v. United States Dep't of Interior, 423 F.3d 790, 799 (8th Cir. 2005) ("South Dakota II")[3]; United States v. Roberts, 185 F.3d 1125, 1137 (10th Cir. 1999); Shivwitz Band v. Utah, 428 F.3d 966, 972-74 (10th Cir. 2005); Nevada v. United States, 221 F. Supp. 2d 1241, 1250-51 (D. Nev. 2002).  In support of this repeatedly rejected delegation challenge, Plaintiff primarily relies on the dissent in Michigan Gaming Opposition.  See Response at 10 (Dkt. No. 21).  This dissent, however, has no precedential value nor is it persuasive.

Further, in its most recent delegation challenge decision, the Supreme Court stated that it has "almost never felt qualified to second-guess Congress regarding permissible degrees of policy judgment that can be left to those executing or applying the law."  Whitman, 531 U.S. at 474-75.  In fact, only twice in its history, and not since 1935, has the Supreme Court invalidated a statute on the grounds of excessive delegation of legislative authority.  The Supreme Court has upheld the constitutionality of statutes promulgated for the "public interest," as well as to ensure fairness and equity.  See, e.g., Nat'l Broad. Co. v. United States, 319 U.S. 190, 225-26 (1943); New York Cent. Sec. Corp. v. United States, 287 U.S. 12, 24-25 (1932); Am. Power & Light Co., 328 U.S. at 104-05; Yakus v. United States, 321 U.S. 414, 420 (1944).

The statutory preamble describes the IRA as "[a]n Act to conserve and develop Indian lands and resources."  48 Stat. 984 (1934).  "The intent and purpose of the [IRA] was 'to rehabilitate the

---

[3] In South Dakota v. United States Dep't of Interior, 69 F.3d 878 (8th Cir. 1995), the Eighth Circuit held that Section 465 was an unconstitutional delegation of legislative power because "providing land for Indians" did not provide an intelligible standard.  However, the Eight Circuit reversed its holding en banc in South Dakota II.

Indian's economic life and give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'" Mescalero Apache Tribe v. Jones, 411 U.S. 145, 152-54 (quoting H.R. Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)). It is clear that the IRA and Section 465, more specifically, were promulgated in the public interest and to ensure fairness and equity. Moreover, "an intelligible principle exists in the statutory phrase 'for the purpose of providing land for Indians' when it is viewed in the statutory and historical context of the IRA." Michigan Gaming Opposition, 525 F.3d at 31 (quoting 25 U.S.C. § 465). "This principle involves providing lands sufficient to enable Indians to achieve self-support and ameliorating the damage resulting from . . . prior federal policy." Id. (internal citations and quotations omitted).

This Court similarly does not feel qualified to second-guess Congress and joins every other federal court that has addressed this issue in finding that Section 465 is not an unconstitutional delegation of legislative authority. Accordingly, this facial challenge to Section 465 is dismissed.

### C. Second Cause of Action

"Plaintiff's Second Cause of Action seeks a declaration that Section 465, as applied to this trust application, is unconstitutional." Compl. ¶ 28. Plaintiff argues that "[g]uidance, if any, provided to the Secretary with respect to the Secretary's discretion under Section 465 would be found in the language of the statute and in the legislative history of the statute," yet "[t]he statute itself provides absolutely no guidance." Id. ¶¶ 30-31. Specifically, "[i]n the instant case, the Secretary, in Section 7.3.1.2 of the ROD,[4] discounts even the minimal guidance provided by the

---

[4] Section 7.3.1.2 of the ROD states that:

As a threshold matter, the Department finds that the Nation's financial wherewithal and competence to manage its affairs do not render it ineligible for placement of land into trust. Section 5 of the IRA is not limited to landless or impoverished tribes, or to tribes

6

legislative history" and therefore "[t]he Secretary's rejection of the guidance renders the application of Section 465 to the instant trust application contrary to the law and unconstitutional." Id. ¶¶ 33-34. Defendants move to dismiss this cause of action. See generally Motion; Reply.

Plaintiff is in effect arguing that Section 465 provides no intelligible standard that satisfies the non-delegation doctrine and if an intelligible standard can be found, it is in the legislative history which Plaintiff alleges limits the Secretary's discretion to accept land into trust to landless Indians or Indians whose economic life needs rehabilitation. Id. ¶¶ 31-32.[5] Plaintiff alleges that in the instant action, the Secretary's failure to adhere to this standard by accepting land into trust for the OIN, who are neither landless nor impecunious, is contrary to the law and unconstitutional. Id. ¶¶ 33-34.

As previously discussed, this Court joins its sister courts in rejecting the proposition that Section 465 lacks an intelligible standard and, therefore, violates the non-delegation doctrine.

---

that are incompetent to handle their own affairs.

Compl. ¶ 33.

[5] The Complaint states:

According to the statute's legislative history, the intent and purpose of the IRA was "to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism." H.R. Rep. no. 1084, 73rd Cong., 2d Sess. at 6 (1934). Representative Howard, the sponsor of the bill in the House of Representatives, described the tremendous loss of land that resulted from the government's allotment policy, begun in 1887, 78 Cong. Rec. 11, 726 (1934), and indicated that the act would help remedy the problem by preventing "any further loss of Indian land" and permitting "the purchase of additional lands for landless Indians." Id. at 11,727; see also 78 Cong. Rec. 11, 123 (June 12, 1934) (statement of Senator Wheeler, sponsor of the bill in the Senate, echoing the remedial goals in relation to Indian lands).

Compl. ¶¶ 31-32.

7

While this Court finds that Section 465 contains an intelligible standard – when it authorizes the Secretary to acquire land "for the purpose of providing land for Indians" – it is not the same standard as the Plaintiff contends. There is nothing, in fact, limiting the reach of the IRA or Section 465 to landless Indians or Indians whose economic life needs rehabilitation. See Michigan Gaming Opposition, 525 F.3d at 32 (acknowledging that the IRA was meant, in part, to redress the failures of prior federal Indian policies and the consequent loss of tribal land but recognizing that the IRA and Section 465 were intended to do more than return tribes to the status quo and instead promote self-determination, economic development and self-governance); see also City of Sault Ste. Marie, Michigan v. Andrus, 532 F.Supp. 157, 162 (D.D.C. 1980) (rejecting proposition that Indians must be "landless" in order for the Secretary to accept land into trust pursuant to Section 465); Tacoma v. Andrus, 457 F.Supp. 342, 345 (D.D.C. 1978) ("[T]he words of [Section 465] nowhere limit its application to landless, destitute, or incompetent Indians. The weight of the legislative history support no such limitation. Congress was concerned with the overall problem of lost Indian lands and not with the resources of individual beneficiaries.").

"There is nothing to suggest that [Section 465] is removed from the overall IRA purpose of advancing economic development among American Indians." Michigan Gaming Opposition, 525 F.3d at 32; see also Morton v. Mancari, 417 U.S. 535, 542 (1974) ("The overriding purpose of the [IRA] was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically."). "[T]he scope of authority delegated to the Secretary under section 5 – to decide whether to grant status as 'Indian Country' to specific plots of land owned by Indians or that is acquired for them – is not so broad as to require limiting principles more specific than pursuing Indian economic development." Michigan Gaming Opposition, 525

F.3d at 32-33. Accordingly, Plaintiff's argument that the Secretary failed to adhere to the standard set forth in Section 465 because the OIN is neither landless nor indigent is erroneous. In fact, this trust allotment conforms with the intelligible principle set forth in Section 465 as it encourages economic development, self-governance and self-determination among the OIN.[6]

Plaintiff summarily argues, in the alternative, that Section 465 was not intended to apply to New York State and the OIN. Response at 11-12.[7] Plaintiff cites nothing other than coincidence in support of this contention. See id. at 12 ("[I]t is not coincidental that all but one of the courts that have held that Section 465 is constitutional are from west of the Mississippi – the area of the country where the federal government issued allotments. Except from Carcieri, none of the cases are from the Northeast, let alone New York, where there were minimal, if any, allotments established."). Contrary to Plaintiff's contention, the IRA is explicit as to its geographic application and does not exclude New York State. See 25 U.S.C. § 473. Further, the legislative history of the IRA and Section 465 contradicts Plaintiff's assertion and provides unequivocal evidence that the statute was not restricted to land subject to allotment and was, in fact, meant to apply to New York State. See, e.g., 78 Cong. Rec. 11124, 11125. Additionally, in a related case, State of New York v. Salazar, 6:08-cv-0644, this Court rejects the argument that Section 465 does not apply to the OIN and directs Plaintiff to its forthcoming September Order for a full discussion.

---

[6] According to the Notice of Availability of the ROD, "[t]he purpose of the Nation's application was to ensure the cultural preservation, self-determination, self-sufficiency and economic independence of the Nation by securing the properties into its trust land base." Dkt. No. 14, Attach. 3.

[7] "[I]n regards to the [OIN], the historical context and legislative purpose have no application; the General Allotment Act did not apply to the Oneidas left in New York, and there were no allotments of land to Indians in New York State by the federal government." Response at 11-12.

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for partial dismissal (Dkt. No. 14) is **GRANTED**;

and it is further

**ORDERED**, that a copy of this Memorandum-Decision and Order be served on all parties.

**IT IS SO ORDERED**.

DATED:	September 21, 2009
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge